**LeClairRyan**
*A Professional Corporation*
One Riverfront Plaza
1037 Raymond Boulevard
Newark, New Jersey 07102
(973) 491-3600
Attorneys for Plaintiff, Days Inns Worldwide, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAYS INNS WORLDWIDE, INC., a Delaware Corporation, | : |
| Plaintiff, | : Civil Action No. 15- |
| v. | : |
| HEMRAJ, LLC, a Texas Limited Liability Company; KETAN MISTRY, an individual; and PANKAJ SHARMA, an individual, | : **VERIFIED COMPLAINT** |
| Defendants. | : |

Plaintiff Days Inns Worldwide, Inc., by its attorneys, LeClairRyan, complaining of defendants Hemraj, LLC, Ketan Mistry, and Pankaj Sharma, says:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Days Inns Worldwide, Inc. ("DIW"), is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Parsippany, New Jersey.

2. Defendant Hemraj, LLC ("Hemraj"), on information and belief, is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business at 1495 East Industrial Drive, Sulphur Springs, Texas, 75482.

3. Defendant Ketan Mistry ("K. Mistry"), on information and belief, is a member of Hemraj and a citizen of the State of Texas, having an address at 1495 East Industrial Drive, Sulphur Springs, Texas, 75482.

4. Defendant Pankaj Sharma ("P. Sharma"), on information and belief, is a member of Hemraj and a citizen of the State of Texas, having an address at 1495 East Industrial Drive, Sulphur Springs, Texas, 75482.

5. Upon information and belief, K. Mistry and P. Sharma are the only constituent members of Hemraj.

6. The amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 & 1338, 15 U.S.C. § 1121 and, with respect to certain claims, 28 U.S.C. § 1367.

8. This Court has personal jurisdiction over the defendants by virtue of, among other things, section 17.6.3 of the September 27, 2010 franchise agreement by and between Hemraj and DIW (the "Franchise Agreement"), described in more detail below, pursuant to which Hemraj has consented "to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey . . . ."

9. This Court has personal jurisdiction over K. Mistry and P. Sharma by virtue of, among other things, the terms of a guaranty (the "Guaranty"), described in more detail below, pursuant to which K. Mistry and P. Sharma acknowledged that they were personally bound by section 17 of the Franchise Agreement.

10. Venue is proper in this District pursuant to section 17.6.3 of the Franchise Agreement, inasmuch as that provision contains an express waiver by Hemraj of any objection to venue in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Days Inn® Marks

11. DIW is one of the largest guest lodging facility franchise systems in the United States, and is widely known as a provider of guest lodging facility services.

12. DIW owns and has the exclusive right to license the use of the service mark DAYS INN and various related trade names, trademarks and service marks (certain of which are on the principal register of the United States Patent and Trademark Office), logos, and derivations thereof (the "Days Inn® Marks"), as well as the distinctive Days Inn® System, which provides guest lodging services to the public under the Days Inn® name and certain services to its franchisees, including a centralized reservation system, advertising, publicity, and training services.

13. DIW or its predecessors first used the DAYS INN mark in 1970 and the Days Inn® Marks are in full force and effect. Certain of the registered Days Inn® Marks are incontestable pursuant to 15 U.S.C. § 1065.

14. DIW has given notice to the public of the registration of the Days Inn® Marks as provided in 15 U.S.C. § 1111.

15. DIW uses or has used the words "Days Inn," among others, as abbreviations of its brand name.

16. Through its franchise system, DIW markets, promotes, and provides services to its guest lodging franchisees throughout the United States. In order to identify the origin of their

guest lodging services, DIW allows its franchisees to utilize the Days Inn® Marks and to promote the Days Inn® brand name.

17. DIW has invested substantial effort over a long period of time, including the expenditure of millions of dollars, to develop goodwill in its trade names and service marks to cause consumers throughout the United States to recognize the Days Inn® Marks as distinctly designating DIW guest lodging services as originating with DIW.

18. The value of the goodwill developed in the Days Inn® Marks does not admit of precise monetary calculation, but because DIW is one of the largest guest lodging facility franchise systems in the United States and is widely known as a provider of guest lodging facility services, the value of DIW's goodwill exceeds hundreds of millions of dollars.

19. The Days Inn® Marks are indisputably among the most famous in the United States.

## The Agreements Between The Parties

20. On or about September 27, 2010, DIW entered into the Franchise Agreement with Hemraj for the operation of a 50-room Days Inn® guest lodging facility located at 1495 East Industrial Drive, Sulphur Springs, Texas 75482, designated as Site No. 42751-96240-01 (the "Facility"). A true copy of the Franchise Agreement is attached hereto as Exhibit A.

21. Pursuant to section 5 of the Franchise Agreement, Hemraj was obligated to operate a Days Inn® guest lodging facility for a fifteen-year term, during which time Hemraj was permitted to use the Days Inn® Marks in association with the operation and use of the Facility as part of DIW's franchise system.

22. Pursuant to section 3.2 of the Franchise Agreement, Hemraj was required to operate the Facility in compliance with DIW's "System Standards," as defined in the Franchise Agreement.

23. Pursuant to section 3.8 of the Franchise Agreement, Hemraj was required to "obtain and maintain during the Term of this Agreement the insurance coverage required under the System Standards Manual from insurers meeting the standards established in the Manual."

24. Pursuant to section 7, section 18.1, and Schedule C of the Franchise Agreement, Hemraj was required to make certain periodic payments to DIW for royalties, system assessments, taxes, interest, reservation system user fees, and other fees (collectively, "Recurring Fees").

25. Pursuant to section 7.3 of the Franchise Agreement, Hemraj agreed that interest is payable "on any past due amount payable to [DIW] under this [Franchise] Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid."

26. Pursuant to section 3.6 of the Franchise Agreement, Hemraj was required to prepare and submit monthly reports to DIW disclosing, among other things, the amount of gross room revenue earned by Hemraj at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to DIW.

27. Pursuant to section 3.6 of the Franchise Agreement, Hemraj agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility and, pursuant to sections 3.6 and 4.8 of the Franchise Agreement, Hemraj agreed to allow DIW to examine, audit, and make copies of the entries in these books, records, and accounts.

28. Pursuant to section 11.2 of the Franchise Agreement, DIW could terminate the Franchise Agreement, with notice to Hemraj, for various reasons, including Hemraj's (a) failure to pay any amount due DIW under the Franchise Agreement, (b) failure to remedy any other default of its obligations or warranties under the Franchise Agreement within 30 days after receipt of written notice from DIW specifying one or more defaults under the Franchise Agreement, and/or (c) receipt of two or more notices of default under the Franchise Agreement in any one year period, whether or not the defaults were cured.

29. Pursuant to section 12.1 of the Franchise Agreement, Hemraj agreed that, in the event of a termination of the Franchise Agreement pursuant to section 11.2, it would pay liquidated damages to DIW in accordance with a formula specified in the Franchise Agreement.

30. Section 18.3 specifically set liquidated damages for the Facility at $1,000.00 for each guest room of the Facility Hemraj was authorized to operate at the time of termination.

31. Section 13 of the Franchise Agreement specified Hemraj's obligations in the event of a termination of the Franchise Agreement, including its obligation to immediately cease using all of the Days Inn® Marks.

32. Pursuant to section 17.4 of the Franchise Agreement, Hemraj agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [Franchise] Agreement or collect amounts owed under this [Franchise] Agreement."

33. Effective as of the date of the Franchise Agreement, K. Mistry and P. Sharma provided DIW with a Guaranty of Hemraj's obligations under the Franchise Agreement. A true copy of the Guaranty is attached hereto as <u>Exhibit B</u>.

34.     Pursuant to the terms of the Guaranty, K. Mistry and P. Sharma agreed, among other things, that upon a default under the Franchise Agreement, they would "immediately make each payment and perform or cause [Hemraj] to perform, each unpaid or unperformed obligation of [Hemraj] under the [Franchise] Agreement."

35.     Pursuant to the terms of the Guaranty, K. Mistry and P. Sharma agreed to pay the costs, including reasonable attorneys' fees, incurred by DIW in enforcing its rights or remedies under the Guaranty or the Franchise Agreement.

### The Defendants' Defaults and Termination

36.     Beginning in 2012, Hemraj repeatedly failed to (a) timely pay Recurring Fees as owed to DIW pursuant to the Franchise Agreement, and (b) provide proof that it obtained the minimum insurance coverage required by DIW under the Franchise Agreement.

37.     By letter dated June 18, 2012, a true copy of which is attached hereto as <u>Exhibit C</u>, DIW advised Hemraj that (a) it was in breach of the Franchise Agreement because it failed to provide proof that it had obtained the minimum insurance coverage required by DIW under the Franchise Agreement, (b) it had 30 days within which to cure this default, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

38.     By letter dated July 6, 2012, a true copy of which is attached hereto as <u>Exhibit D</u>, DIW advised Hemraj that (a) it was in breach of the Franchise Agreement because it owed DIW approximately $31,810.16 in outstanding Recurring Fees, (b) it had 10 days within which to cure this default, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

39.     By letter dated August 14, 2012, a true copy of which is attached hereto as <u>Exhibit E</u>, DIW advised Hemraj that (a) it was in breach of the Franchise Agreement because it

failed to provide proof that it had obtained the minimum insurance coverage required by DIW under the Franchise Agreement, (b) it had until August 19, 2012 to cure this default, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

40.   By letter dated September 21, 2012, a true copy of which is attached hereto as Exhibit F, DIW advised Hemraj that (a) it was in breach of the Franchise Agreement because it owed DIW approximately $36,075.01 in outstanding Recurring Fees, (b) it had 10 days within which to cure this default, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

41.   By letter dated October 24, 2012, a true copy of which is attached as Exhibit G, DIW terminated the Franchise Agreement, effective October 24, 2012, due to Hemraj's continued failure to meet its insurance and financial obligations under the Franchise Agreement, and advised Hemraj that (a) it was to immediately discontinue the use of all trade names, service marks, signs, and other forms of advertising, and other indicia of operation as a Days Inn® Facility, and to discontinue the use of other materials on the premises effectively to distinguish the same from its former appearance as a Days Inn® System facility, (b) all items bearing the Days Inn® Marks had to be removed, (c) all signs and any listings in directories and similar guides in which the Facility was identified as a Days Inn® had to be changed, (d) it was required to pay to DIW as liquidated damages for premature termination the sum of $50,000.00 as required under the Franchise Agreement, (e) it had to de-identify the Facility within 10 days from the receipt of the notice, and (f) demand was made for all outstanding Recurring Fees through the date of termination.

42.   The termination of the Franchise Agreement precludes Hemraj from any further use of the Days Inn® Marks in or around the Facility.

43. The termination of the Franchise Agreement precludes Hemraj from any further use of the Days Inn® Marks to induce the traveling public to use the Facility in any way.

44. Since the termination of the Franchise Agreement, Hemraj has continued to use the Days Inn® Marks to induce the traveling public to rent guest rooms at the Facility.

45. Since the termination of the Franchise Agreement, Hemraj has used the Days Inn® Marks without authorization to rent rooms through, among other things, failure to remove Days Inn® signage and continuing to identify the Facility as a Days Inn® guest lodging facility.

46. Hemraj has continued to misuse the Days Inn® Marks despite receiving notification from DIW to cease and desist from the misuse of the Days Inn® Marks.

### FIRST COUNT

47. DIW repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 46 of the Verified Complaint.

48. Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides in pertinent part that "[a]ny person who shall, without the consent of the registrant — use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . ."

49. Hemraj marketed, promoted, and rented, and continues to market, promote, and rent rooms at the Facility through the unauthorized use of the Days Inn® Marks, and such use caused and is likely to continue to cause confusion or mistake among prospective or actual customers, in violation of Section 32 of the Lanham Act.

50. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . goods and/or services . . . shall be liable in a civil action . . . ."

51. The acts of Hemraj in marketing, promoting, and renting rooms at the Facility, through and with the Days Inn® Marks, constitute:

      a) a false designation of origin;

      b) a false and misleading description of fact; and

      c) a false and misleading representation of fact;

that caused and are likely to continue to cause confusion, or to cause mistake, or deception, as to the affiliation of Hemraj's Facility with DIW, and to cause confusion, or to cause mistake, or deception, to the effect that DIW sponsors or approves of the guest lodging services that Hemraj provides at the Facility, all in violation of Section 43(a) of the Lanham Act.

52. Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), provides in pertinent part that "[t]he owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection."

53. Hemraj's use of the Days Inn® Marks in connection with goods and services at the Facility, after the Days Inn® Marks became famous, caused and will continue to cause

dilution and disparagement of the distinctive quality of the Days Inn® Marks, and lessened and will continue to lessen the capacity of the Days Inn® Marks to identify and distinguish the goods and services of DIW, all in violation of Section 43(c) of the Lanham Act.

54. Hemraj's on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act are malicious, fraudulent, willful, and deliberate.

55. Hemraj's on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act have inflicted and continue to inflict irreparable harm on DIW.

56. DIW has no adequate remedy at law.

57. No previous injunctive relief has been awarded with respect to this matter in this case or any other case.

**WHEREFORE**, pursuant to 15 U.S.C. §§ 1114, and 1125(a) & (c), DIW demands judgment against Hemraj:

a) Preliminarily and permanently restraining and enjoining Hemraj, its affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert or participation with them, from marketing, promoting, or selling guest lodging services at the Facility through and with the Days Inn® Marks; and

b) Granting compensatory damages, treble damages, attorneys' fees, prejudgment interest, costs of suit, and such other and further relief as this Court shall deem just and proper.

## **SECOND COUNT**

58. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 57 of the Verified Complaint.

59. Pursuant to sections 3.6 and 4.8 of the Franchise Agreement, Hemraj agreed to allow DIW to examine, audit, and make copies of Hemraj's financial information, including books, records, and accounts, relating to the gross room revenue earned at the Facility.

60. Hemraj has engaged in acts and practices, as described, which amount to infringement of the Days Inn® Marks in an unlawful, unfair, and fraudulent manner which is likely to confuse the public.

61. As a result, Hemraj owes restitution and the disgorgement of profits, in an amount unknown to DIW, and which amount cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements and books from Hemraj.

**WHEREFORE**, DIW demands judgment ordering that Hemraj account to DIW for any and all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Facility through and with the Days Inn® Marks.

### THIRD COUNT

62. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 61 of the Verified Complaint.

63. On October 24, 2012, DIW terminated the Franchise Agreement, effective October 24, 2012, due to Hemraj's continued failure to meet its insurance and financial obligations under the Franchise Agreement.

64. Section 12.1 of the Franchise Agreement provides that, in the event of termination of the Franchise Agreement due to action of the Franchisee, Hemraj shall pay liquidated damages to DIW within 30 days of termination.

65. Section 18.3 of the Franchise Agreement set liquidated damages for the Facility at $1,000.00 multiplied by the number of guest rooms Hemraj was authorized to operate at the Facility. At the time of termination, Hemraj was authorized to operate 50 guest rooms at the Facility. Accordingly, the amount of liquidated damages due and owing from Hemraj is $50,000.00.

66. Notwithstanding DIW's demand for payment, Hemraj has failed to pay DIW the liquidated damages as required in sections 12.1 and 18.3 of the Franchise Agreement.

67. DIW has been damaged by Hemraj's failure to pay liquidated damages.

**WHEREFORE**, DIW demands judgment against Hemraj for liquidated damages in the amount of $50,000.00, together with interest, attorneys' fees, and costs of suit.

## FOURTH COUNT

68. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 67 of the Verified Complaint.

69. By virtue of the premature termination of the Franchise Agreement, DIW sustained a loss of future revenue over the remainder of the fifteen-year term of the Franchise Agreement.

70. If the Court determines that Hemraj is not liable to pay DIW liquidated damages as required by sections 12.1 and 18.3 of the Franchise Agreement then, in the alternative, Hemraj is liable to DIW for actual damages for the premature termination of the Franchise Agreement.

71. DIW has been damaged by Hemraj's breach of its obligation to operate a Days Inn® guest lodging facility for the remaining term of the Franchise Agreement.

**WHEREFORE**, DIW demands judgment against Hemraj for actual damages in an amount to be determined at trial, together with interest, attorneys' fees, and costs of suit.

### FIFTH COUNT

72. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 71 of the Verified Complaint.

73. Pursuant to section 7, section 18.1, and Schedule C of the Franchise Agreement, Hemraj was obligated to remit Recurring Fees to DIW.

74. Despite its obligation to do so, Hemraj failed to remit certain of the Recurring Fees due and owing under the Franchise Agreement in the current amount of $57,957.46.

75. Hemraj's failure to remit the agreed Recurring Fees constitutes a breach of the Franchise Agreement and has damaged DIW.

**WHEREFORE**, DIW demands judgment against Hemraj for the Recurring Fees due and owing under the Franchise Agreement, in the current amount of $57,957.46, together with interest, attorneys' fees, and costs of suit.

### SIXTH COUNT

76. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 75 of the Verified Complaint.

77. At the time of the termination of the Franchise Agreement, Hemraj was obligated to pay DIW Recurring Fees.

78. Despite its obligation to do so, Hemraj failed to pay certain of the Recurring Fees due and owing under the Franchise Agreement in the current amount of $57,957.46.

79. In addition, Hemraj benefited from its wrongful use of the Days Inn® Marks after termination of the Franchise Agreement and paid no royalty or other Recurring Fees to DIW in return for that benefit.

80. Hemraj's failure to compensate DIW constitutes unjust enrichment and has damaged DIW.

**WHEREFORE**, DIW demands judgment against Hemraj for the Recurring Fees due and owing under the Franchise Agreement, in the current amount of $57,957.46, together with interest, attorneys' fees, and costs of suit, and all royalties and other Recurring Fees that should be paid to compensate DIW for the period during which Hemraj misused the Days Inn® Marks and was thereby unjustly enriched, together with interest and costs of suit.

### SEVENTH COUNT

81. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 80 of the Verified Complaint.

82. Pursuant to the terms of the Guaranty, K. Mistry and P. Sharma agreed, among other things, that upon a default under the Franchise Agreement, they would immediately make each payment and perform each obligation required of Hemraj under the Franchise Agreement.

83. Despite their obligation to do so, K. Mistry and P. Sharma have failed to make any payments or perform or cause Hemraj to perform each obligation required under the Franchise Agreement.

84. Pursuant to the Guaranty, K. Mistry and P. Sharma are liable to DIW for Hemraj's liquidated damages in the amount of $50,000.00, or actual damages in an amount to be determined at trial, and Hemraj's Recurring Fees due and owing under the Franchise Agreement,

in the current amount of $57,957.46, and for those additional Recurring Fees attributable to the period during which Hemraj has misused the Days Inn® Marks.

**WHEREFORE**, DIW demands judgment against K. Mistry and P. Sharma for damages in the amount of:

a)  All liquidated damages or actual damages and Recurring Fees due and owing under the Franchise Agreement, together with interest, attorneys' fees, and costs of suit; and

b)  All profits, royalties, and other Recurring Fees that should be paid to compensate DIW for the period during which Hemraj misused the Days Inn® Marks and was thereby unjustly enriched, together with interest, attorneys' fees, and costs of suit.

### EIGHTH COUNT

85.  DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 84 of the Verified Complaint.

86.  By letter dated October 24, 2012, DIW terminated the Franchise Agreement, effective October 24, 2012, due to Hemraj's continued failure to meet its insurance and financial obligations under the Franchise Agreement.

87.  Section 13.2 of the Franchise Agreement provides that, when the Franchise Agreement is terminated, DIW has the right to "without prior notice enter the Facility, and any other parcels, . . . and paint over or remove and purchase for $10.00, all or part of any interior or exterior Mark-bearing signage (or signage face plates), including billboards, whether or not located at the Facility, that [Hemraj did] not remove[] or obliterate[] within five days after termination."

88.   Hemraj continues to market, promote, and rent rooms at the Facility through the unauthorized use of the Days Inn® Marks, and such use caused and is likely to continue to cause confusion or mistake among prospective or actual customers.

89.   Hemraj's unauthorized use of the Days Inn® Marks has inflicted and continues to inflict irreparable harm on DIW.

**WHEREFORE**, DIW demands judgment declaring that DIW, or its authorized agent, has the right, without prior notice to Defendants, to enter the property at the Facility and remove any and all exterior signage, exterior items and other exterior materials displaying the Days Inn® Marks.

**LeClairRyan**
Attorneys for Plaintiff,
Days Inns Worldwide, Inc.

By: _____
Bryan P. Couch

Dated: 4/17/15

### CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

**LeClairRyan**
Attorneys for Plaintiff,
Days Inns Worldwide, Inc.

By: _____
Bryan P. Couch

Dated: 4/17/15

## VERIFICATION

STATE OF NEW JERSEY    )
                                           ) ss:
COUNTY OF MORRIS      )

      Suzanne Fenimore, of full age, being duly sworn according to law, upon her oath, deposes and says:

      I am Senior Director of Contracts Compliance for Days Inns Worldwide, Inc., which is plaintiff in this action.

      I have read the foregoing Verified Complaint and all the allegations contained therein. Except as to allegations alleged upon information and belief, which allegations I believe to be true, all the allegations in the Verified Complaint are true based on my personal knowledge, the records of DIW or information available through employees of DIW.

                                                           _____
                                                           SUZANNE FENIMORE

Sworn and subscribed to before
me this 16th day of April, 2015

_____
NOTARY PUBLIC

**CINDY J. O'CONNOR**
Notary Public
State of New Jersey
\_\_ssion Expires Feb. 13, 2020